NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT W. NYHOLM, 2ND,           :
                                 :     Civil Action No. 08-4824 (RMB)
                 Plaintiff,      :
                                 :
        v.                       :     OPINION
                                 :
OFFICER PRYCE, et al.,           :
                                 :
                 Defendants.     :

**APPEARANCES:**

Plaintiff pro se
Robert W. Nyholm, 2nd
Albert Wagner Youth Correctional Facility
P.O. Box 500
Bordentown, NJ 08505

**BUMB**, District Judge

    Plaintiff Robert W. Nyholm, 2nd, a prisoner confined at Albert Wagner Youth Correctional Facility in Bordentown, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on two separate occasions he broke fingers while confined at Garden State Youth Correctional Facility and that Defendant Correctional Medical Services refused to provide any services beyond provision of Ibuprofen.  Plaintiff alleges that his fingers have not healed properly.

Plaintiff also alleges that, while he was confined at Garden State Youth Correctional Facility, Defendant Officer Pryce conducted a pat-down search in a manner deliberately to cause Plaintiff severe physical pain and emotional distress.  Defendant Officer Stillwell was present throughout and made no effort to intervene, but instead laughed at Plaintiff's distress. Following this incident, Plaintiff required psychotherapeutic medications and therapy sessions.

Plaintiff alleges that, after he filed a grievance about the pat-down search incident, Defendant Officer Rollins threatened and intimidated Plaintiff with such remarks as, "You should be careful when you walk the halls," and "Don't go through with anymore paperwork."  Plaintiff alleges that Defendant Officer

2

Mekentco became aware of the pat-down search incident, after Plaintiff filed a grievance, but failed to take any remedial action.

Plaintiff alleges that, after he grieved the pat-down search incident, Defendant Sergeant John Doe placed him in administrative segregation for seven days.  In administrative segregation, while Plaintiff was awaiting trial on new charges unrelated to the conviction that led to his present confinement, he was deprived of access to legal materials, telephone, and visits from his attorney.  Plaintiff alleges that he was allowed out of his cell only every two days for a ten-minute shower. Plaintiff alleges that he could not attend religious services. Finally, Plaintiff alleges that the ten-foot-square windowless cell was "filthy."

Plaintiff seeks compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

3

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

5

> Persons ... may be joined in one action as defendants
> if:
> > (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
> > (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

6

## IV.   ANALYSIS

A.   Eighth Amendment Claims

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson v. McMillian, 503 U.S. at 5.

7

1.  The Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to

8

his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate

'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.  Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met.  ...  Finally, deliberate
indifference is demonstrated '[w]hen ... prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment."  Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out."  Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that 'result[] in
interminable delays and outright denials of medical care to
suffering inmates.'"  Id. at 347 (citation omitted).

Here, Plaintiff's claim that, in two separate incidents, he
broke fingers, which Defendant Correctional Medical Services
refused to treat, and which left him with residual injuries on
both hands, is sufficient to avoid dismissal at this screening
stage of the litigation.

10

2.  Excessive Force Claim

Where the Eighth Amendment claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation omitted):  "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

11

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321). Thus, not all use of force

is "excessive," the level of a constitutional violation.

In addition, "a corrections officer's failure to intervene

in a beating can be the basis of liability for an Eighth

Amendment violation under § 1983 if the corrections officer had a

reasonable opportunity to intervene and simply refused to do so.

Furthermore, ... a corrections officer can not escape liability

by relying upon his inferior or non-supervisory rank vis-a-vis

the other officers." Smith v. Mensinger, 293 F.3d 641, 640 (3d

Cir. 2002).

The claim for excessive use of force in violation of the

Eighth Amendment may proceed as against Defendants Pryce and

Stillwell.

   3.   Threat Claims

As the United States Supreme Court has stated,

"[i]ntentional harassment of even the most hardened criminals

cannot be tolerated by a civilized society." Hudson v. Palmer,

468 U.S. 517, 528 (1984). The Eighth Amendment protects

prisoners against calculated harassment. Id. at 530. Generally,

however, mere verbal harassment does not give rise to a

constitutional violation. See McBride v. Deer, 240 F.3d 1287,

1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth

Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th

Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988). Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988). Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)

(defendant laughed at prisoner and threatened to hang him).
However, threatening language coupled with the threatening use of
a weapon and outrageous conduct by prison personnel may indicate
a constitutional deprivation.  Douglas, 684 F. Supp. at 398
(brandishing a butcher knife in close proximity to prisoner and
threatening to kill him may amount to a constitutional
violation); see also Northington v. Jackson, 973 F.2d 1518 (10th
Cir. 1992) (gun was put to prisoner's head); Burton v.
Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot
prisoner).

    Here, Plaintiff reports only verbal harassment insufficient
to state a claim under the Eighth Amendment.  The claim against
Defendant Rollins will be dismissed with prejudice.

B.    Failure to Investigate

    Plaintiff's claim against Defendant Officer Mekentco, for
failure to investigate or respond to his grievance, fails to
state a claim.

    "'[A]n allegation of a failure to investigate, without
another recognizable constitutional right, is not sufficient to
sustain a section 1983 claim.'"  Graw v. Fantasky, 68 Fed.Appx.
378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl.
District Court opinion) (citing DeShaney v. Winnebago County
Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).  Cf. Burnside
v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005)

(prisoners do not have a constitutionally protected right to a prison grievance process); <u>Lewis v. Williams</u>, 2006 WL 538546, *7 (D. Del. 2006) (failure to investigate a grievance does not raise a constitutional issue) (collecting cases).   <u>Compare</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions).

This claim will be dismissed with prejudice.

C.    <u>Claims Related to Segregation</u>

Plaintiff alleges that he was placed in administrative segregation, in retaliation for his grievance about the pat-down incident, and that the conditions in administrative segregation violated several of his constitutional rights.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.   <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process

15

Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint

which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

17

Thus, disciplinary confinement of prisoners does not generally implicate due process protections. Sandin v. Connor, 515 U.S. 472, 484-86 (1995). To state a claim, an inmate must show that he has experienced disciplinary confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Retaliation claims, however, survive Sandin, even when the retaliatory action does not involve a liberty interest. Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000). To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Here, Plaintiff's claim of seven days' confinement in administrative segregation is not sufficient to state a claim of deprivation of liberty without due process; it is, however,

18

sufficient to state a claim for retaliation against Defendant Sergeant John Doe.

Plaintiff alleges that the conditions were such as to violate other constitutional protections, also, specifically: (1) the Sixth Amendment right to counsel in a pending criminal matter, (2) the Eighth Amendment right to be free from cruel and unusual conditions of confinement, (3) the First Amendment right to practice his religion, (4) the First Amendment right of access to the courts, based upon his lack of access to legal materials, (5) the First Amendment right to telephone access.

### 1.   Sixth Amendment Right to Counsel

A pre-trial detainee facing criminal charges has a Sixth Amendment right to representation by counsel.  Here, Plaintiff alleges that he was denied visits, and perhaps telephone calls, with counsel for a period of seven days.  Plaintiff does not allege that he was denied written communication with counsel or that he suffered any injury from the limits on his ability to confer with counsel during his confinement in administrative segregation.

In any event, Plaintiff cannot proceed at this time with a claim that his confinement in administrative segregation interfered with his Sixth Amendment right to counsel.  Either Plaintiff suffered no actual injury, or he suffered an injury in the form of wrongful conviction and the claim will not accrue

until such time as his conviction is invalidated, see <u>Heck v.</u> <u>Humphrey</u>, 512 U.S. 477 (1994); <u>Aranda v. Department of Social and</u> <u>Health Services</u>, 73 Fed.Appx.204, 2003 WL 21750789 (9th Cir. 2003) (unpubl.); <u>Hazel v. Reno</u>, 20 F.Supp.2d 21 (D.D.C. 1998).

This claim will be dismissed without prejudice.

2.  <u>Conditions of Confinement</u>

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  <u>Id.</u> at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  <u>Wilson v.</u> <u>Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Helling v. McKinney</u>, 509 U.S. at 32 (quoting <u>Rhodes</u>, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  <u>See</u> <u>Farmer v.</u> <u>Brennan</u>, 511 U.S. 825, 835 (1994); <u>Wilson</u>, 501 U.S. at 303.

20

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff's allegations regarding the conditions of confinement in administrative segregation for a period of seven days are not sufficient to state a claim for violation of the Eighth Amendment. This claim will be dismissed with prejudice.

21

3.   Free Exercise Claim

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ."  U.S. Const. amend. I.  "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'"  Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however.  To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."  DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice

22

violates the right to free exercise of religion by showing that
it violates the "reasonableness test" set forth in Turner v.
Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[1]
The standards delineated in Turner and O'Lone indicate that when
a prison regulation or practice encroaches upon prisoners' rights
to free exercise of their religion, the regulation is valid if it
is reasonably related to a legitimate penological interest.
Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.   The
reasonableness standard involves the examination of the following
four factors:   (1) whether the regulation or practice in question
furthers a legitimate governmental interest unrelated to the
suppression of expression; (2) whether there are alternative
means of exercising First Amendment rights that remain open to
prison inmates; (3) whether the right can be exercised only at
the cost of less liberty and safety for guards and other
prisoners; and (4) whether an alternative exists which would
fully accommodate the prisoners' rights at de minimis cost to
valid penological interests.   Thornburgh v. Abbott, 490 U.S. 401,

---

[1] More recently, in Employment Division, Dept. of Human
Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme
Court held that neutral laws of general applicability that
incidentally impinge on religious practices do not violate the
Free Exercise Clause.   No federal Court of Appeals has yet held
that the Smith test supplants the Turner and O'Lone analysis in
the prison context.   See Levitan v. Ashcroft, 281 F.3d 1313 (D.C.
Cir. 2002) and cases cited therein.   See also Fraise v. Terhune,
283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue,
but declining to reach it in the absence of either party urging
application of Smith).

415-18 (1989); Turner, 482 U.S. at 89-91.  However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Thornburgh, 490 U.S. at 411.  Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor."  Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).

Here, Plaintiff alleges that he was prohibited from attending religious services during his confinement in administrative segregation.  This allegation is subject to the Turner analysis, which cannot be resolved based upon the allegations of the Complaint.  Accordingly, this claim will be permitted to proceed.

4.   Right of Access to the Courts

The Court construes Plaintiff's allegations that he was deprived of "legal materials," for a seven-day period during confinement in administrative segregation, as a claim that he was denied access to the courts.[2]

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government

---

[2] Plaintiff does not state whether the "legal materials" to which he was denied access related to his pending criminal action or to some other legal matter.  The nature of the materials does not alter the result, here.

for redress of grievances.  <u>Bill Johnson's Restaurants, Inc. v.</u>
<u>NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  <u>Procunier v.</u>
<u>Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>,
<u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>
<u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any <u>other</u> litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of

conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has failed to allege any actual injury as a result of his seven-day lack of access to his "legal materials." To the extent he suffered injury in the form of wrongful conviction, that claim will not accrue until such time as his conviction is invalidated. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Accordingly, the access-to-courts claim will be dismissed without prejudice.

5. <u>Right of Telephone Access</u>

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech, ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)

(evaluating constitutionality of limiting one channel of
communication with those outside of prison through review of
adequacy of alternative channels of communication). See also
Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations
governing receipt of subscription publications by federal prison
inmates). Thus, to the extent not inconsistent with their status
as prisoners or with legitimate penological objectives, inmates
have a First Amendment right to communicate with "friends,
relatives, attorneys, and public officials by means of visits,
correspondence, and telephone calls." Owens-El v. Robinson, 442
F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented
and finalized, 457 F.Supp. 984 (W.D. Pa. 1978), aff'd in part and
vacated in part on other grounds sub nom., Inmates of Allegheny
County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).

The specific contours of prisoners' First Amendment rights
to free speech and association, however, have not been
established. It is generally agreed that inmates must be
afforded reasonable access to telephones so as not to infringe
the First Amendment or impede meaningful access to the courts in
violation of the Fourteenth Amendment. See Inmates of Allegheny
County Jail v. Wecht, 565 F.Supp. 1278, 1284 (E.D. Pa. 1983);
Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa. 1978),
aff'd in part and vacated in part on other grounds sub nom.,
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir.

27

1979).  Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited.  Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992).  Prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. Griffin-El v. MCI Telecommunications Corp., 835 F.Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).  In particular, courts have approved the installation of collect-only telephone systems and, for non-legal calls, some degree of monitoring to control instances of inmate telephone fraud, harassment of crime victims, or disputes among inmates over telephone use.  See, e.g., Wooden v. Norris, 637 F.Supp. 543 (M.D. Tenn. 1986) (installation of coinless telephones justified given evidence that prior coin-operated system led to fraudulent billing, vandalism, inmate calls to victims of their crimes, and illicit trade).  See also Newkirk v. Sheers, 834 F.Supp. 772, 792 (E.D. Pa. 1993).

Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional. Most of these restrictions involve limits on the numbers of calls permitted per week, limits on what persons can be called, and time limits on individual calls.  But see Johnson v. Galli, 596 F.Supp. 135 (D. Nev. 1984) (limitation to one call per week, including both personal and legal uses of telephone, unreasonable

and in violation of First Amendment). Detainees may be limited to one monitored personal telephone call every other day. <u>Martin v. Tyson</u>, 845 F.2d 1451 (7th Cir.), <u>cert. denied</u>, 488 U.S. 863 (1988).

Here, the allegation that Plaintiff was denied telephone access for one week while confined in administrative segregation is not sufficient to state a claim for deprivation of his First Amendment right to freedom of association. Plaintiff does not allege that he was deprived of other means of association, such as the sending and receiving of letters, and the restriction was imposed for a very short period of time. This claim will be dismissed with prejudice.

D.   <u>State Law Tort Claims</u>

Plaintiff asks this Court for leave to file "late" state tort claims for medical negligence, assault, and battery. This request will be denied without prejudice. The state law tort claims against Defendants Officer Pryce, Officer Stillwell, and Correctional Medical Services, Inc., will not be dismissed at this time. Any decision as to the timeliness of the state tort claims must await appropriate discovery and assertion of legal defenses.

V.   <u>CONCLUSION</u>

For the reasons set forth above, certain claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

29

1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[3]  An appropriate order follows.

Renée Marie Bumb
United States District Judge

Dated 4/20/09

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.